CUMMINS vs. GRAY.*

1. Mere *defects* in a declaration will be considered as cured, by plea to the merits, either *before* or *after* a demurrer.
2. But, where a declaration contains no substantial cause of action, its insufficiency will not be cured by plea to the merits; and may be taken advantage of either on a second demurrer; by motion in arrest of judgment; or in error.
3. So, where a demurrer to a declaration, containing no substantial cause of action, has been overruled, and the defendant pleads over—a second demurrer, to the plea, may well be extended back to the declaration.
4. Goods taken in attachment, for sums exceeding the jurisdiction of justices of the peace, are repleviable, only by the defendant in the attachment, his attorney, agent or factor.†
5. In such case, where goods are replevied by a stranger, (not being the attorney, agent or factor of the defendant,) and a bond is executed,—such bond, assigned by the sheriff to the plaintiff in execution, furnishes to the latter no legal cause of action against the obligor.

Error, to the Circuit Court of Tuskaloosa.

This action was debt, on a bond executed on the replevy of property, taken in attachment; and was prosecuted by John O. Cummins, assignee, against Francis T. Scott, James Jack and James Gray.

The declaration complained of Gray, the suit being discontinued as to the other defendants—for that whereas theretofore, to wit, on the 16th day of February, A. D. 1830, the said plaintiff sued out an original attachment, before one Powell, then an acting justice of the peace, in and for the county of Tuskaloosa, against the estate of one William H. Jack, an

* The case of Cummins & Foster vs. Gray, argued at the same time with this, was decided on the same principles.
† The act upon the subject of attachments, embraced in Aikin's Digest, page 40, section 11, would seem to authorise a replevy either by the defendant, his agent, attorney, or other person. But it will be perceived, that it was not a reference to this act that the above case was adjudicated.

absconding debtor, for the sum of one hundred and eighty-six dollars and nine cents; then due from the said William H. Jack to the plaintiff, by promissory note; which said attachment was made returnable to the March term, then ensuing, of Tuskaloosa Circuit Court. And afterwards, to wit, on the 18th day of February, 1830, the said attachment having been levied by one Elias Jenkins, sheriff of Tuskaloosa county, upon the goods and chattels of the said William H. Jack—the said defendant, together with the said Francis T. Scott and James Jack, afterwards, to wit, on the 6th day of March, 1830, and before the rendition of final judgment by the said Circuit Court, on the said attachment; and while the said proceedings were still pending, made application to the said Jenkins, sheriff as aforesaid, pursuant to the statute in such case made and provided, to replevy the said goods and chattels so attached, as aforesaid; and thereupon the said Jenkins, so being the sheriff, as aforesaid, according to the form and effect of the statute, in such case provided, did then and there take from the said Francis T. Scott, and the said James Jack, and the said James Gray, the defendant, as their surety, a bond in the sum of three hundred and seventy-two dollars and eighteen cents—wherein they jointly and severally acknowledged themselves to be held and firmly bound unto the said Elias Jenkins, sheriff of Tuskaloosa county, and his successors in office, in the said sum of three hundred and seventy-two dollars and eighteen cents; with a condition thereunder written—that if the said Francis T. Scott, and the said James Jack, or the said defendant, should well and

truly return the said goods and chattels, so replevied, to the said sheriff, as aforesaid, to wit, &c., (specifying them,) whenever they should be required to do so, by an order of said Court; or should pay and satisfy such judgment as should be rendered against the said defendant in the attachment—then the said bond to be null and void, otherwise to remain in full force. And thereupon the said sheriff afterwards, to wit, on the day and year aforesaid, at the prayer of the said Francis T. Scott and James Jack, delivered the said goods and chattels of the said William H., the defendant in the attachment, to the said Francis T. Scott and James Jack, aforesaid. And the said plaintiff averred, that afterwards, to wit, at September term of the said Circuit Court, of Tuskaloosa county, such proceedings were had in the said attachment, that by the consideration of said Court, judgment was rendered against the said William H., the defendant in the attachment, for the sum of two hundred and twenty-four dollars and twenty-nine and three-fourth cents, for the said plantiff's debt, &c.; and the plaintiff further averred, that the said Francis T. Scott, or the said James Jack, or the said defendant, Gray, did not well and truly return the said goods and chattels, so by them replevied, as aforesaid, to the said sheriff, although required to do so by the said sheriff, on the 29th day of November, 1830, pursuant to an order of the said Circuit Court: nor had either of the said obligors, at any time paid and satisfied the said judgment so rendered, as aforesaid, against the said William H. Jack; but the same was then in full force, unsatisfied, unreversed, and not appealed from: whereby

the said bond had become forfeited and absolute.—
And the plaintiff farther averred, that afterwards,
to wit, on the 29th day of November, 1830, the said
sheriff, under his hand and seal, by his certain writ-
ten indorsement on the back of said bond, had
duly assigned the said bond with the condition, to
the plaintiff. By means whereof, &c., (the usual
breach.)

The second count in the declaration was similar
to the first, reciting the process of attachment
against William H. Jack: the execution of the re-
plevy bond; and setting out the condition at length.

At spring term, 1831, the defendant, Gray, by
counsel, having prayed oyer of the bond, and condi-
tion, and the assignment thereof, filed a demurrer:
which, at October term, 1831, being overruled, the
defendant plead over—

1st. *Nul tiel* record.

2d. A special plea, that the goods attached, were
not of the goods and effects of the defendant in the
attachment.

3d. That the goods attached were not of the pro-
perty, or in the possession of said William H.; but
the goods and chattels of said Francis T., and the
said James.

4th. That the said goods and chattels had never
been required or demanded of the said Francis T.,
James, or defendant; and that they were not bound
to deliver them.

5th. That said Francis I., made claim to the
goods, and offered the usual affidavit and bond, to try
the right: but which said sheriff refused.

6th. That said Francis T., said James and defendant, did not refuse to deliver the goods when demanded.

7th. That the said obligors had performed the conditions of the bond, and committed no breach thereof.

8th. That defendant had not received a reasonable notice, that he would be required to deliver the goods; and had no opportunity to do so.

9th. That no reasonable notice had been given to any of the obligors, that they would be required to deliver the goods.

10th. That said Francis had the custody of the said goods, and offered to deliver them, but was not offered reasonable time to do so.

11th. *Nil debet.*

To the first of these pleas, the plaintiff replied, averring the existence of a record, such as was declared on: and to the other pleas demurred.

At April term, 1832, the matters of law arising upon the plaintiff's demurrers, to the second, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth and eleventh pleas of the defendant, being considered, the Court ruled the said pleas insufficient, to bar or preclude the plaintiff from maintaining his aforesaid action; but inasmuch as it seemed to the Court, that the said declaration of the plaintiff, contained no legal cause of action against the defendant—it was adjudged, that the said demurrer be extended to the said declaration; and that the plaintiff take nothing by his suit, &c.

Judgment for the defendant.

And now, comes the plaintiff in error, and says, that in the proceedings in the Court below, there is manifest error, in this, to wit—

1st. The Court erred in determining, that the demurrer reached back to the declaration.

2d. That the Court erred in sustaining the demurrer to plaintiff's declaration.

*Ellis*, for the plaintiff in error—*Stewart, Crabb*, and *Moody*, contra.

SAFFOLD, J.—The assignments in this case are— 1st. That the Court erred, in determining that the demurrer reached back to the declaration. 2d. In sustaining the demurrer to the declaration.

The counsel for the plaintiff does not deny the general principle, that a demurrer to a plea, may reach the declaration; but it is contended, the circumstance of the defendant having demurred to the declaration; of his demurrer having been overruled; and of his having pleaded over, creates an exception to the rule: that, the Circuit Court having once passed on the sufficiency of the declaration, it was incompetent for the same tribunal, at a succeeding term, to reverse the decision; also, that the defendant having submitted to the first decision, he thereby waived the defect, if any, in the declaration, and could not, afterwards, claim any benefit from it; and that to adjudge it insufficient, on the demurrer to his several bad pleas, is to give him an advantage for his own wrong.

The principle is conceived to be well settled, that a demurrer to any part of the pleading may refer to

the first error, and when filed by the plaintiff, to the plea, it may be visited on his own declaration, if defective and insufficient.

The position is equally correct, that a party who has acquiesced in a decision, by pleading over, amending the pleading, or otherwise varying the state of record in conformity to the decision, will be considered to have waived that question, and can not afterwards claim a revision of it, *in the same form,* either in the same, or in the appellate Court. But the same question may subsequently arise, in a *different form,* and require an independent adjudication : it it may so happen, where a special plea, containing matter which would be good, under the general issue, has been overruled on demurrer, and the defendant offers evidence of the same defence under the general issue ; or, it may be so, where a motion, in arrest of judgment is made, on the same objection to the declaration, for which a demurrer has been overruled ; and on the same principle, the supposed insufficiency of this declaration, was subject to an independent consideration, on the demurrer to the pleas : the same principle of decision, in either form, would produce a similar effect.

Many defects in a declaration may be cured, by pleading to the merits, either before or after a demurrer. So far as this effect has been produced, the plaintiff is entitled to the benefit of it, whenever the question subsequently recurs, wither on a second demurrer, on a motion in arrest of judgment, or in error. Where, however, the declaration does not contain a substantial cause of action, the insufficiencies can not be cured by a plea to the merits.

2. The remaining question relates to the sufficiency of the declaration. As the demurrer could have but a general reference to it, if it contained one good count, that was sufficient.

No question is raised, respecting the authority of a justice of the peace to issue an attachment for this or any larger amount, and make the same returnable to the Circuit Court. On this point, the statute is entirely clear, as it also is in the requisition, " that whenever the property of an absconding debtor shall be attached, it shall not be replevied, unless the security in the replevy bond shall undertake to return the specific property attached, or pay and satisfy such judgment as may be rendered against the defendant.[a]

But, the principle objection urged against the declaration is, that it is founded on a replevy bond, given by persons, who do not appear or purport to have had any authority to act for the defendant in the attachment. The statute of 1807, authorises only the defendant, his attorney, agent or factor, to replevy the estate attached. This is the general law applicable to attachments, for sums, exceeding fifty dollars, returnable to the Courts of record : nor does there appear to have been, at the time of these proceedings, any other statute, giving a more latituninous right to replevy, except the statute of 1814, which will also be noticed.

Then, it is material to inquire into the legal effect of the replevy bond, at taken in this case.

By the act of 1807, the replevy could be effected, alone by giving special bail to the action, as though the defendant had been arrested, under a *capias ad*

[a] Toul.Dig. 21, act of 1818.

*respondendum.* It is shewn, however, that by the later statutory provision of 1818, as quoted above, in case of an *absconding* debtor, the replevy can only be made, by a bond, conditioned to return the specific property attached, or to pay and satisfy such judgment as may be rendered in the cause. This condition having been substituted in the particular case, in lieu of the special bail bond, and the statute having prescribed no other mode of proceeding upon it, in the event of a forfeiture, the provision of the act of 1807, necessarily became applicable to it, so as to place it on the footing of bail bonds.

The course of proceeding on bail bonds is prescribed by another act of 1807, " concerning bail in civil cases." Such was the opinion of this Court, in the case of *Sartin & Rodgers* vs. *Weir & Co.*[a]

[a] 3 Stewart & Porter.

In that case the Court sustained the right of the plaintiff in the attachment to sue and recover, as assignee of the sheriff, on a replevy bond taken pursuant to the said act of 1818, as in case of assigned bail bonds : and, though it was then said, that a *scire facias*, was a proper writ in such case, it was not said that the action of debt, on the bond, would not have been equally sustainable. Hence, it appears that the circumstance alluded to, that the replevy bond was not given by the defendant in the attachment, or any one representing him, creates the chief difficulty.

It might, at first view, appear, that as a replevy bond, from any other persons equally sufficient, would be no less available, than if given by the attorney, agent or factor of the defendant, there could be no objection to it, on principle, and that it might.

be supposed to fall within the intent and meaning of the statute: that the only object was to relive the property from the custody of the officer, to save the expense, and to ensure to the plaintiff a return of the property, or the payment of the debt, in the event of a recovery.

This view of the case, has been deemed well worthy of consideration; but we can not disregard the fact, that the bond grew out of a judicial proceeding, in which the course to be pursued is regulated by law; and that it was not taken pursuant to the directions of either statute which has been referred to.

Yet, there is another statute, which, it is contended sustains the course taken in this case—that is, the act of 1814, " to revise, consolidate and amend the several acts, relative to justices of the peace and constables." The fifth section of this act prescribes the affidavit, bond, &c., to be given by one wishing to prosecute an attachment, before justices of the peace; and it further provides, " that such attachment may be levied on the defendant's goods and chattels, which shall remain in the hands and possession of the officer levying the same, unless the defendant, his or her agent or attorney, or *some other person*, replevy the same," &c.

The 15th section authorises justices of the peace, to issue an attachment for any sum above their jurisdiction, and make the same returnable to the Circuit Court; *provided* the plaintiff comply with the terms and requisitions contained in the said 5th section.— Can this statute sanction the bond as given and assigned in this case? It was obviously passed with exclusive reference to proceedings to be had before

justices of the peace, except the 15th section.   This
section only  directs the issuance of attachments to
the higher Court, on the plaintiff's complying with
the terms therein prescribed for him.   It says noth-
ing of the rights of the defendant, or of the course
to be pursued by them, but seems to refer him back
to previous statutes.   Then admitting that the vari-
ous statutes in relation to attachments, are to be con-
sidered *in pari materia* and construed with reference
to each other;   also, that according to the act of 1827,
all these laws are to be liberally expounded, still, the
difficulty is not removed; no authority is found by
which  a stranger, or any indifferent person, can
claim the right to replevy property attached, for sums
exceeding the jurisdiction of justices of the peace.
Unless the  replevy has  been made by one who, by
law, could  claim the right to do so, the bond can
not fall within the provisions of the statutes regula-
ting the condition thereof, and authorising its assign-
ment to the plaintiff, by the sheriff, as in case of bail
bonds.   Were it admitted, that the reason is the
same for giving the same right of replevy, and all
the same properties to the bond, whether the attach-
ment be returnable before the justice, or the Circuit
Court, yet it is to be recollected, the law has not de-
clared the same right and properties to exist, and the
principle is both important and delicate.   If every
one has an equal right to replevy attached property,
there might often be scrambles for the preference:
and an indifferent person might succeed against the
defendant, his attorney, agent or factor; and though
the Legislature has inadvertently or intentionally
given the general right, (if that statute is to be lit-

erally construed, but of which we now express no opinion,) in respect to small demands, and where the consequences could be less serious, it does not follow, that the same right must attach where the amount is larger; creating a stronger inducement to management and intrigue.

From these views, we arrive at the conclusion, that the declaration does not contain a legal cause of action; and that the demurrer properly extended to the insufficiency.

As respects the various pleas, it is sufficient to say, they are all considered bad.

But whether or not the sheriff can, at any future time, treat his assignment of the bond as a nullity, and recover upon it an indemnity for any injury he may sustain, from having permitted the replevy of the property, in the manner it was done, is a question which does not now arise, and on which we express no opinion.

The investigation of other points made in argument, is rendered unnecessary, from the opinions expressed on such as have been noticed.

Let the judgment be *affirmed.*